### J. A. PARKER v. E. A. DANIELS.

(Filed 11 September, 1912.)

**1. Contracts—Statute of Frauds—Direct Assumption of Liability.**

A contract to answer the "debt, default, or miscarriage of another," which the statute of frauds requires to be in writing to be binding, relates only to agreements to be surety for the debts of another; and the statute does not apply to verbal contracts assumed by the promisor so as to discharge such other from liability to the creditor.

**2. Same—New Contract—Evidence.**

The plaintiff, who had been transporting cargoes by water in connection with a steamboat operated by a corporation, receiving as compensation a certain proportionate part of the freight charges, refused to continue this arrangement for the reason that the corporation was in arrears of its payment to him. The corporation having made a change of management, its president told the plaintiff that he would not assume the arrearage of debt, but would be personally responsible from then on for the amount the plaintiff should earn under the former arrangement: *Held*, the promise of the president of the corporation, the defendant in the action, created a new contract, not within the statute of frauds, and was binding on him.

**3. Contracts — Statute of Frauds — Pleading — Waiver—Objection and Exception—Appeal and Error.**

The defense that a verbal promise was within the meaning of the statute of frauds, and unenforcible, must be pleaded and objection raised, to be available; and while in this case it was not done, the court decided upon the merits of the case, as no exception had been entered, the case argued upon its merits, and the point seemed to have been waived.

APPEAL by defendant from *Bragaw, J.,* at January Term, 1912, of PASQUOTANK.

Civil action. The following issues were submitted without objection:

1. Did defendant contract with the plaintiff to personally pay for the freight hauled, as alleged? Answer: Yes.

2. What amount is due plaintiff by defendant? Answer: $399.10.

From the judgment rendered, the defendant appealed.

*I. M. Meekins, Ward & Thompson for plaintiff.*
*E. F. Aydlett, W. A. Worth for defendant.*

BROWN, J. We have considered the several assignments of error set out in the briefs of the learned counsel for the defendant and do not think that any of them can be sustained. The matter seems to be one almost entirely of fact, and was settled by the jury adversely to the defendant under the clear charge of the court.

The only assignment of error we deem it necessary to consider is that which relates to the statute of frauds. The plaintiff sought to recover from the defendant the sum of $399.10, alleged to be due plaintiff by the defendant for freights hauled by plaintiff for the LeRoy Steamboat Company, a corporation of which the defendant was president, the plaintiff contending that the defendant agreed to be responsible for the indebtedness.

The defendant denied the contract, and contended further that it was a contract to answer for the debt of another, and was not in writing, and came within the statute of frauds.

Upon this feature of the case his Honor charged the jury: "That if you shall find from the evidence and by the greater weight thereof that the defendant agreed to be responsible to plaintiff for such sums as might become due to the plaintiff if he would continue his work of freighting, and would see that plaintiff should be paid such sums as he earned thereby, then you should answer the first issue "Yes"; otherwise, you should answer it "No."

There is abundant evidence in the record sustaining the charge of the court intending to prove a contract upon the part of the defendant, not so much to assume a debt of the LeRoy Steamboat Company as to create a new responsibility for which the defendant alone agreed to be held responsible.

The evidence tends to prove that the plaintiff had been operating a boat between Weeksville and Elizabeth City in conjunction with the LeRoy Steamboat Company under an agreement whereby he was to receive a certain portion of the freights; that on 14 June, 1911, the said company owed the plaintiff about $700, which has never been paid; that at that time the management of the said company changed hands and the defendant became its president.

The testimony tends further to prove that on that date the plaintiff refused to carry any further freight, or to go on with his work in connection with the said company, because it had failed to pay him the aforesaid indebtedness; that plaintiff had a conversation with the defendant and told him that he would not do any more work under the contract with the said company, and that the defendant said that he would not be responsible for any past debt of the company, but that if Parker would go on with his work, from then on the defendant would be personally responsible for what Parker should earn. This statement was made by the defendant on 14 June, 1911, and is proven by several witnesses and expressed in various forms of language.

Under this contract with the defendant the plaintiff worked up to 19 July, 1911, at which time the amount due him by the defendant was $399.10.

It is to be observed that the defendant does not plead the statute of frauds, nor did he object to the evidence when it was offered, and, strictly speaking, the point cannot be fairly raised upon this record. But as that seems to have been waived, we consider the question upon its merits as if the statute had been properly pleaded, or the point raised upon an objection to the evidence.

We are of opinion that upon this evidence, which is scarcely controvertible, the contract is not one within the statute of

frauds. This statute, which requires a special promise to answer the "debt, default, or miscarriage of another" to be in writing, is intended only to invalidate verbal agreements to be surety for the debt of another, for which that other continues to remain liable. It does not forbid a verbal contract to assume the contract of another who may be discharged from all liability to the creditor, the promisor becoming sole debtor in his place. *Haun v. Burrell,* 119 N. C., 547; *Whitehurst v. Hyman,* 90 N. C., 489; *Sheppard v. Newton,* 139 N. C., 533; *Jenkins v. Holley,* 140 N. C., 380; Clark on Contracts, page 57.

Applying this principle to the evidence in this case, it is apparent that the plaintiff had ended his contract with the LeRoy Steamboat Company because of its insolvency and refused to go on further with his work. When the management was changed and the defendant became president, the evidence shows that a new contract was entered into, not between the LeRoy Steamboat Company and the plaintiff, but between the defendant and the plaintiff, whereby the defendant personally assumed the liability to the plaintiff for the payment of the amounts which he should earn, and that the credit was given exclusively to the defendant.

This was not in any view of the evidence an assumption of a debt for and on account of the LeRoy Steamboat Company, but was in every sense a new contract, for which the defendant became personally liable. *Mason v. Wilson,* 84 N. C., 51; *Packer v. Benton,* 35 Conn., 350.

No error.